UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:                                                      No. 13-10-11101 JA

ELOY T. MARTINEZ and
ROSINA T. MARTINEZ,

     Debtors.

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Walter R. Gould's Objection to Claim of Exemptions filed May 19, 2010 (Docket No. 31), the Chapter 13 Trustee's Objection to Amended Schedule C, filed June 7, 2010 (Docket No. 35); and the Debtor's Motion to Avoid Liens Pursuant to 11 U.S.C. § 522(f), filed June 8, 2010 (Docket No. 36). Walter R. Gould ("Gould") and the Chapter 13 Trustee objected to the Debtors' claim of homestead exemption. The Debtors seek to avoid a judicial lien filed by Gould under 11 U.S.C. § 522(f) on the ground that the lien impairs their homestead exemption.

The Debtors had objected to the Gould's claim in this case. *See* Objection to the Claim of Creditor Gould, filed October 6, 2010. By a stipulated order, the Debtors and Gould resolved the claim objection. *See* Stipulated Order entered April 14, 2011. (Docket No. 91). Subsequently, Gould, the Debtors and the Chapter 13 Trustee stipulated to entry of an order in which they stipulated to certain facts, and jointly requested the Court to decide the objections to claim of homestead exemption and the Debtors' motion to avoid judicial lien upon the stipulated facts. *See* Stipulated Order entered July 15, 2011. (Docket No. 97).

After consideration of the Stipulated Findings of Fact, the Debtors' and Gould's briefs in support of their respective positions, and applicable statutes and relevant case law, the Court finds that the Debtor, Eloy T. Martinez, is not entitled to claim a homestead exemption in the

property located at 501 Roman Drive, Espanola, New Mexico 87532 ("Espanola Property" or "Property"). Based on the stipulated value of the Property, and because the Debtors are only entitled to claim one homestead exemption in the Property, the judicial lien does not impair the Debtors' exemption. Consequently, the Court will deny the Debtors' motion to avoid the judicial lien held by Gould.

## STIPULATED FACTS

The Stipulated Order entered July 15, 2011 contains a finding that the Debtors, Gould, and the Chapter 13 Trustee have stipulated and agreed to the following:[1]

1. Creditor Gould claims a debt secured by a judgment taken against Debtor Rosina Martinez prior to her marriage to Debtor Eloy Martinez.

2. Gould filed a suit to foreclose this judgment lien on February 4, 2007 and filed a *lis pendens* on the same date.

3. Debtors filed their petition for Chapter 13 relief on March 8, 2010 (the "Petition Date").

4. The Debtors reside in a home that is part of the Espanola Property. The Debtor Rosina Martinez-Archuleta inherited the Property from her mother's estate on May 17, 1995.

5. The Debtors were married on March 3, 2003.

6. On the date that Debtors filed for bankruptcy relief (March 8, 2010), Debtor Rosina Martinez' name was the only name on the title to the deed to the Espanola Property and she held it as her sole and separate property.

7. Debtor Rosina Martinez executed a quitclaim deed to the Espanola Property to Debtor Eloy Martinez on March 18, 2010. There was no prior Court approval for this post-petition transfer.

---

[1] The Court has made minor, non-substantive changes to some of the wording of the parties' stipulations.

-2-

8. Debtor Eloy Martinez executed a warranty deed to transfer the Espanola Property back to Debtor Rosina Martinez and himself on August 26, 2010. There was no prior Court approval for this transfer.

9. Debtor Eloy Martinez caused payments close to $18,000 to be made by checks from a joint bank account, which Debtor Eloy Martinez shares with his son Eloy Martinez Jr., to pay for repairs, changes or additions on the Espanola Property. Such payments for repairs were made within the last few years during which time the Debtors were already married, but after Gould's judicial lien was recorded and before the foreclosure suit was filed by Gould.

10. According to Debtors, Debtor Eloy Martinez was not aware of the debt or the lien Creditor Gould had against Debtor Rosina Martinez at the time he assisted in paying for repairs on the Espanola Property or at any time until he accepted service for Debtor Rosina Martinez of the foreclosure suit.

11. Debtor Rosina Martinez initially claimed a $60,000 homestead exemption in the Espanola Property when both Debtors filed for bankruptcy relief, but the Debtors later amended Schedule C and are currently claiming a homestead exemption of $60,000 each for a total of $120,000 of homestead exemptions.

12. Debtors, Creditor Gould, and Trustee signed and agreed to a stipulated order that resolves Debtors' objection to the Claim of Creditor Gould, Gould's Motion for Summary Judgment, Debtors' Motion for Additional Time Regarding Summary Judgment, and the value of the Espanola Property. In this stipulation, which was subsequently approved by the Court, the Debtors and Creditor Gould have stipulated that Debtor Rosina Martinez is entitled to one homestead exemption on the Espanola Property in the amount of $60,000. The homestead

exemption of Debtor Eloy Martinez in the Espanola Property has not been resolved and is pending the resolution of the objections filed by the Chapter 13 Trustee and Creditor Gould.

13. The amount of Gould's allowed claim is stipulated to be $85,000, bearing interest at the rate of 8.75% per annum from the date of the stipulated order and secured to the extent of the value in the Espanola Property remaining after the allowance of any homestead exemptions of Debtors. *See* Docket No. 91.

14. Debtors originally valued the Espanola Property at $90,000. However, in the stipulated order referenced above (after an appraisal), the parties have stipulated that the value of the residence is $130,000 and the adjacent lot has a value of $38,000; therefore, the total value of the Espanola Property is $168,000. These properties have always been used together and were transferred to the Debtor in one conveyance. The adjacent lot is used for a back yard to the residence.

15. Pursuant to this stipulated order, certain other real property once owned by Debtor Rosina Martinez was transferred to her son Greg, has been devoted by Greg to the Plan, and will be sold. This property has recently been listed by Greg as required pursuant to the terms of the stipulation and the plan to be re-formatted. Proceeds from the sale of this property will be used to fund the plan; and, if this pays the Gould claim, per the stipulation of the parties, the Espanola Property will not have to be liquidated.

16. Debtor Rosina Martinez, in an attempt to transfer the Espanola Property to herself and Debtor Eloy Martinez, may have not effectively completed that transfer, and was advised by her counsel that, at the least, a correction deed needed to be filed. It is unclear at this point whether that has been accomplished.

-4-

Case 10-11101-j7    Doc 101    Filed 01/24/12    Entered 01/24/12 16:15:34 Page 4 of 14

17. Debtors, Creditor Gould, and Trustee have all agreed to a Joint Request for the Court to decide Debtors' Motion to Avoid Lien and Trustee and Creditor Gould's Objection to Exemptions based upon material facts stipulated to herein and legal arguments submitted separately.

18. It is the opinion testimony of Debtor Rosina Martinez that the repairs, changes, and additions to the Espanola Property resulting from Debtor Eloy Martinez's payments increased value of the Espanola Property by as much as $54,000 (three times the repaid, improvement cost). Creditor Gould does not agree with this opinion testimony.

The Stipulated Order entered April 14, 2011 includes the following stipulation by the Debtors, Gould and the Chapter 13 Trustee:

19. The value of the residence at 501 Roman Drive Espanola, NM 87532 is $130,000. The lot behind the residence owned by Debtor Rosina Martinez has a value of $38,000.00. The residence and the lot behind the residence together comprise the Espanola Property and together have a value of $168,000. This value is the agreed value for all purposes in this bankruptcy case and is binding on Debtors, Gould, and the Chapter 13 Trustee.

The Court also finds:

20. Eloy Martinez claimed a homestead exemption under N.M.S.A. 1978 § 42-10-9.

OTHER STIPULATIONS

The Stipulated Order entered April 14, 2011 includes the following additional stipulations and determinations by the Court based on those stipulations:

21. Gould is a secured creditor to the extent that his lien is not avoided in regard to Espanola Property under 11 U.S.C. § 522(f).

22. Debtor Rosina Martinez is entitled to one homestead exemption in the Espanola Property for herself in the amount of $60,000.

23. Gould has an allowed claim of $85,000.00, secured by the Espanola Property, and that claim shall bear interest at the rate of 8.75% from the date of entry of the stipulated order (April 14, 2011 ) ("Gould's Allowed Claim"). Gould's Allowed Claim is a secured claim to the extent of the value of the Espanola Property remaining after any allowed homestead exemption of Debtors.

## DISCUSSION

A. <u>Whether Eloy Martinez is Entitled to Claim a Homestead Exemption in the Property</u>

The parties do not dispute that Rosina Martinez is entitled to a homestead exemption against the Espanola Property in the amount of $60,000. Eloy Martinez claims his own homestead exemption in the in the amount of $60,000 against the Espanola Property. If his claim of exemption is allowed, the total amount of the Debtors' homestead exemption against the Espanola Property would be $120,000.

Eloy Martinez asserts that his pre-petition use of his separate property to pay for repairs to the Espanola Property during his marriage to Rosina Martinez gave rise to an equitable lien in favor of Eloy Martinez against the Property. On the petition date, Eloy Martinez and Rosina Martinez resided at the Espanola Property, and Rosina Martinez continued to own the Espanola Property as her separate property. Eloy Martinez maintains that his equitable lien against the Espanola Property is a sufficient interest in the Property to support his claim of homestead exemption. The Court disagrees.

It is undisputed that the applicable exemption statute is the New Mexico homestead exemption statute. That statute provides:

-6-

> Each person shall have exempt a homestead in a dwelling house and land occupied by the person or in a dwelling house occupied by the person although the dwelling is on land owned by another, provided that the dwelling is owned, leased or being purchased by the person claiming the exemption. Such a person has a homestead of sixty thousand dollars ($60,000) exempt from attachment, execution or foreclosure by a judgment creditor and from any proceeding of receivers or trustees in insolvency proceedings and from executors or administrators in probate. If the homestead is owned jointly by two persons, each joint owner is entitled to an exemption of sixty thousand dollars ($60,000).

> N.M.S.A. § 42-10-9 (1978)(Cum. Supp. 2007).

Eloy Martinez asserts that the last phrase in the first sentence of the statute: "provided that the dwelling is owned, leased or being purchased by the person claiming the exemption," modifies only the immediately preceding phrase: "in a dwelling house occupied by the person although the dwelling is on land owned by another." Thus, Mr. Martinez's construction of the statute would allow him to claim a homestead exemption based solely on his occupation of the Espanola Property as his residence. The Court finds that the New Mexico homestead exemption statute cannot be construed in the manner Mr. Martinez suggests.

To decipher the meaning of a statute, the Court must begin with the language of the statute itself. *See U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)("The task of resolving the dispute over the meaning of § 506(b) begins where all such inquiries must begin: with the language of the statute itself.")(citation omitted). The grammatical structure of the statute indicates that the phrase, "in a dwelling house occupied by the person although the dwelling is on land owned by another," applies to the entire portion of the sentence that precedes it. The modifying phrase at the end of the sentence is set off by the only comma used in the entire sentence. There is no comma separating the first two phrases in the sentence. Consequently, the last phrase necessarily modifies both preceding phrases, not just the immediately preceding phrase.

-7-

A reading of the statute in the way Mr. Martinez requests would mean that any person occupying a dwelling as his or her residence could claim a homestead exemption in the residence without having any economic interest in the residence. This would include, for example, a friend of the owner or the spouse of an adult child of the owner who resides at the residence without charge. But the language of the statute requires that the person either own, lease, or be in the process of purchasing the dwelling on the property in which the person claims a homestead exemption. Such interests constitute economic interests in property. Mr. Martinez's reading of the statute fails because a person who merely occupies a property as his or her residence would have no *economic* interest in the property to exempt.

Eloy Martinez also asserts that his claim of an equitable lien against the Espanola Property is sufficient to entitle him to claim a homestead exemption in the Espanola Property, relying on *Nesset v. Blueher Lumber Co. (In re Nesset),* 33 B.R. 326 (Bankr. N.M. 1983). In *Nesset*, the debtors formed a trust under which they were the trust beneficiaries, transferred all of their real and personal property to the trust (including their residence), and recorded the transfer of legal title to their residence to the trust. *Id.* at 327. The *Nesset* court first found that if the debtors' transfer of their residence were *invalid*, the debtors retained legal title to the residence and could claim it exempt. *Id.* at 328. The *Nesset* court further reasoned that if the transfer of the residence to trust were *valid*, the debtors were the equitable owners of the residence and could also claim it exempt under applicable New Mexico law. *Id.* Thus, either as legal title holders or as equitable owners of the real property, the debtors were entitled to claim a homestead exemption in the real property. *Id.*

-8-

*Nesset* is consistent with holdings by many courts that equitable title or equitable ownership of a homestead can support a claim of homestead exemption.[2] However, an equitable lien against a residence does not create an ownership interest in the residence.[3] Nor does the holder of an equitable lien by virtue of the lien itself have a leasehold interest. Finally, an equitable lien does not constitute an interest of a person purchasing the property. Because an equitable lien does not constitute an ownership interest, a leasehold interest, or an interest of a person purchasing property, an equitable lien is insufficient to support a claim of homestead exemption under the New Mexico homestead exemption statute.[4] Thus, Eloy Martinez is not entitled to a homestead exemption based on his claim of an equitable lien against the Espanola Property.

Eloy Martinez's final argument in support of his claim of homestead exemption in the Espanola Property is that he holds an ownership interest in the Espanola Property. Post-petition Rosina Martinez transferred an ownership interest in the Espanola Property to Eloy Martinez. Although the transfer was made without the required approval of the Bankruptcy Court, Eloy Martinez argues that, under 11 U.S.C. § 550, the transfer is merely voidable, not void;

---

[2] *See, e.g., In re Kester,* 339 B.R. 749, 753 (10th Cir.BAP 2006), *aff'd,* 493 F.3d 1208 (10th Cir. 2007)(applying Kansas law); *In re Takes*, 334 B.R. 642, 650 (N.D. Iowa 2005), *aff'd,* 478 F.3d 902 (8th Cir. 2007)(applying Iowa law); *In re Mastowski*, 135 B.R. 1, 1 (Bankr.W.D.N.Y. 1992)(applying New York law). In New Mexico, the buyer under a real estate contract is vested with equitable title in and has equitable ownership of the real estate. *Garcia v. Garcia*, 111 N.M. 581,588, 808 P.2d 31, 38 (1991). *Nesset* would support a buyer of a homestead under a real estate contract vested with equitable title to the residence having a sufficient interest in the real estate to claim a homestead exemption.

[3] The Bankruptcy Code defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). That definition is consistent with the commonly accepted definition of lien. *See Black's Law Dictionary* 933 (7th ed. 1999)(defining lien as "[a] legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied."). An equitable lien in real property does not create an ownership interest in the property. *Rushton v. Williams (In re Williams)*, 271 B.R. 663, 672 (Bankr D. Utah 2001)(acknowledging that "no ownership interest can arise based on an equitable lien"). *See also In re Polimino*, 345 B.R. 708, 712 (10th Cir. BAP 2006)(applying Colorado law, finding that the grant of a lien, such as a mortgage, against real property does not convey a real property interest)(citing *Columbus Invs. v. Lewis,* 48 P.3d 1222, 1225 (Colo. 2002)).

[4] *See* N.M.S.A. 1978, § 42-10-9 (Cum. Supp. 2007)(. . . owned, leased, or being purchased by the person claiming the exemption.").

consequently, the transfer is valid unless and until it is avoided. The Court finds this argument unpersuasive. A debtor's entitlement to claim an exemption of property in a bankruptcy case is determined as of the bankruptcy petition date.[5] As a result, any interest Eloy Martinez acquired in the Espanola Property post-petition is disregarded for purposes of determining whether he is entitled to a homestead exemption against the Espanola Property in this bankruptcy case.

B. <u>Whether the Debtors Can Avoid Gould's Judicial Lien</u>

The Debtors seek to avoid Gould's judicial lien as impairing their homestead exemptions pursuant to 11 U.S.C. §522(f). Whether a judicial lien impairs a debtor's exemption is determined in accordance with the formula found in 11 U.S.C. § 522(f)(2)(A). That section provides:

> [A] lien shall be considered to impair an exemption to the extent that the sum of—
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.
>
> 11 U.S.C. § 522(f)(2)(A).

The parties have stipulated to the following facts relevant to the application of the formula found in 11 U.S.C. § 522(f)(2)(A):

1. The value of Gould's judicial lien was $85,000 as of April 14, 2011.[6]

2. Eloy Martinez caused payments "close to" $18,000 to be made by checks from a joint bank account shared by Eloy Martinez with his son Eloy Martinez Jr. to pay for repairs,

---

[5]*See, In re Mahendra,* 131 F.3d 750, 757 (8th Cir. 1997); *In re Irwin*, 338 B.R. 839, 850 (E.D. Cal. 2006); *In re Thompson*, 311 B.R. 822, 825 (Bankr. D. Kan. 2004)(citation omitted).
[6] No stipulation was made regarding the amount of Gould's judicial lien on March 8, 2010, the date the Debtors filed their bankruptcy petition.

-10-

changes or additions on the Espanola Property. Such payments were made after the Gould's judicial lien attached to the Property but before the Debtors commenced their bankruptcy case.

   3.  In Rosina Martinez's opinion, the payments made to repair and make additions to the Espanola Property increased the value of the Espanola Property by as much as $54,000 (three times the amount paid from the joint account of Eloy Martinez and Eloy Martinez Jr.). Gould disputes this opinion testimony.

   4.  The value of the Espanola Property, for all purposes in this bankruptcy case, is $168,000.

  Eloy Martinez asserts that under New Mexico law, the use of his $18,000 of separate funds to enhance the value of the Espanola Property that Rosina Martinez owns as her separate property creates an equitable lien in favor of Eloy Martinez. He asserts further that the amount of the lien is equal to the amount by which the value of the Property was enhanced by the use of his separate funds, and that this lien should be included in application of the formula set forth in 11 U.S.C. § 522(f)(2)(A). New Mexico courts have held that when community funds of both spouses are used to make improvements to the separate real property of one spouse, the community is entitled to an equitable lien for the enhanced value of the separate property resulting from the use of community funds.[7] An equitable lien arises only if the property has been acquired or the value of the property is increased through use of both separate and community funds, although the court equates use of community labor with use of community funds. *Martinez v. Block*, 115 N.M. 762, 764-65, 858 P.2d 429, 431-32 (Ct. App. 1993). There is some support for the proposition that, under New Mexico law, an equitable lien in a spouse's separate property may arise in favor of the other spouse as a result of use of the other spouse's

---

[7] *See, e.g., Portillo v. Shappie*, 97 N.M. 59, 636 P.2d 878 (1981).

separate funds to improve the property. *See, e.g., Sparks v. Sparks*, 84 N.M. 267, 502 P.2d 292 (1972).[8]

The debtor has the burden of proof to establish that a lien should be avoided under 11 U.S.C. § 522(f)(2)(A).[9] Eloy Martinez has not satisfied this burden. The Court, therefore, need not determine whether or to what extent the equitable lien Eloy Martinez claims against the Espanola Property should be included when applying 11 U.S.C. § 522(f)(2)(A).

The parties stipulated that Eloy Martinez caused payments close to $18,000 to be made to repair and improve the Espanola Property by checks from a joint bank account which Debtor Eloy Martinez shares with his son Eloy Martinez Jr. There is no stipulation regarding whether all or part of those funds were Mr. Martinez's separate property, whether any of the funds were community property, or to what extent the funds belonged to Eloy Martinez Jr.[10] Further, the Court cannot find that use of the funds increased the value of the Espanola Property by $54,000 as Mr. Martinez asserts because the parties stipulated only that Rosina Martinez would have testified that the repairs in question increased the value of the residence "by as much as $54,000." No detail is given about the nature of the repairs or to otherwise support Ms. Martinez's testimony. The parties stipulated that Gould disputed the testimony. Consequently, the stipulated facts are insufficient to establish that Eloy Martinez holds an equitable lien against the Espanola Property that should be included when calculating impairment under 11 U.S.C. § 522(f)(2)(A).

---

[8] The application of an equitable lien against community property most often arises in connection with the division of property between spouses when a marriage is dissolved. For that reason, it is not clear whether such equitable liens are valid against third party creditors.

[9] *In re DeCarolis,* 259 B.R. 467, 471 (1st Cir. BAP 2001)(citation omitted); *In re Gregory Rockhouse Ranch*, 380 B.R. 258, 265 (Bankr. D.N.M. 2007); *In re Thompson*, 263 B.R. 134, 138 (Bankr. W.D. Okla. 2001).

[10] The amount of the equitable lien in favor of Eloy Martinez would be reduced to the extent his son's monies were used to pay for the repairs or to the extent Rosina Martinez's interest in community property was used to pay for the repairs.

-12-

*Application of the Stipulated Facts to the Impairment Formula*[11]

The petition date is the operative date to make determinations under 11 U.S.C. § 522(f)(2)(A), including determinations of lien amounts and the value of the exempt property. To avoid a judicial lien under 11 U.S.C. § 522(f)(2)(A) against property that was property of the estate on the petition date, the lien must impair the exemption as of the petition date.[12] Even if the Court were to assume that Eloy Martinez were entitled to an equitable lien in the amount of $18,000 that should be included for purposes of applying the formula contained in 11 U.S.C. § 522(f)(2)(A), and that the amount of Gould's judicial lien on the petition date was $85,000[13], the Gould judicial lien does not impair Rosina Martinez's homestead exemption.

| | |
|---|---|
| Gould judicial lien | $ 85,000 |
| Equitable lien | 18,000 |
| Homestead exemption | 60,000 |
| TOTAL | $ 163,000 |

---

[11] When there are multiple liens encumbering a debtor's interest in real property, applying this simple formula can become complicated. *See* 11 U.S.C. § 522(f)(2)(B) ("In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens."). Bankruptcy courts are divided as to whether the state law priority of liens must be maintained in determining impairment under 11 U.S.C. § 522(f)(2)(A). *Compare In re Shafner,* 165 B.R. 660, 662 (Bankr.D.Colo. 1994), *aff'd on other grounds,* 82 F.3d 426 (10th Cir. 1996)(Table)(finding that when judicial liens are "sandwiched" between consensual liens and statutory liens, the court must preserve the state law order of priority, without regard to whether the liens are avoidable) *with In re Trahan,* 337 B.R. 448, 451 (Bankr.D.Conn. 2006)(applying lien avoidance formula literally to include non-avoidable statutory liens, even though it may upset state law priority). The Tenth Circuit has not decided this issue. However, all Circuit courts that have considered this issue have determined that 11 U.S.C. § 522(f) must be applied literally, without regard to state law priorities. *See, In re Kolich,* 328 F.3d 406, 410 (8th Cir. 2003)(holding that 522(f)(1)(A) disrupts state law lien priorities so that the computation of lien impairment which directs the court to add "all other liens" requires the court to include consensual mortgage liens that are junior to the judicial lien at issue); *In re Brinley,* 403 F.3d 415 (6th Cir. 2005)(same); *In re Taras,* 131 FedAppx. 167, 170 (11th Cir. 2005)(junior tax lien properly included in calculating impairment under § 522(f)). It is not necessary to decide that issue here.

[12] *See In re Farnsworth*, 384 B.R. 842, 851 (Bankr. D.Ariz. 2008); *In re Wilding*, 475 F.3d 428, 432 (1st Cir. 2007) (the Bankruptcy Court must calculate the value of the lien as of the filing of the petition.); *In re Pacheco*, 342 B.R. 352, 357 (Bankr. D.N.M. 2006)("the value of the liens, the value of the property and the amount of the exemption are all measured as of the date of the filing of the petition.")(citations omitted); *In re Levinson*, 372 B.R. 582, 586-87 (Bankr. E.D.N.Y. 2007), *aff'd,* 395 B.R. 554 (E.D.N.Y. 2008)(stating that "the petition date has been held to be the operative date for all § 522(f) determinations, including determinations regarding the value of the debtor's property and the value of the liens.")(citations omitted).

[13] The parties stipulated that the amount of the judicial lien as of April 14, 2011 was $85,000 and that the lien amount bears interest at the rate of 8.75% per annum. No stipulation was made regarding the amount of the judicial lien on March 8, 2010, the petition date. There is no evidence of any post-petition payment on the judicial lien.

-13-

Value of homestead         $ 168,000

Because the sum of the liens and the amount of the homestead exemption are less than the value of the homestead, the judicial lien does not impair the homestead exemption.

## CONCLUSION

Based on the stipulated facts as applied to the relevant law, the Court concludes that Eloy Martinez is not entitled to claim a homestead exemption in the Espanola Property and that the Gould's lien does not impair the Debtors' homestead exemption. The Court will enter separate orders consistent with this Memorandum Opinion.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:     January 24, 2012

COPY TO:

Jennie D. Behles
Attorney for Debtors
PO Box 7070
Albuquerque, NM  87194

Denise Trujillo
Attorney for Creditor Walter Gould
10400 Academy NE, Suite 350
Albuquerque, NM 87111

Kelley L. Skehen
Chapter 13 Trustee
625 Silver Ave. SW, Suite 350
Albuquerque, NM  87102